STALLONE, J.,
The court hereby issues the following findings of fact and conclusions of law in support thereof.
FINDINGS OF FACT
(1) On December 4, 1990, the Commonwealth and defendant, Francisco Perez, commenced the selection of a panel of 12 principal and three alternate jurors[1] for trial in the above-captioned matter to begin on Wednesday, January 2, 1991.
(2) During the selection, defendant interrupted proceedings, complaining that his court-appointed attorney, Clement J. Cassidy, Esq., refused to follow his specific instructions concerning the selection of the jurors.
(3) First, defense counsel informed the court, at sidebar[2] that defendant was upset about the exercise of a peremptory challenge by the Commonwealth to *445 strike from the panel Claudio Rodriquez, a Hispanic male, as well as another male venireman who was his age. The court then directed the assistant district attorney, Curtis E. Barnes, to set forth on the record “neutral reason(s)” for his decision to strike the only Hispanic on the jury panel. When the assistant district attorney was unable to state neutral reasons satisfactory to the court, the court ordered that Mr. Rodriquez, a member of the same minority race as defendant, be “reinstated” as a principal juror as required by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986).
(4) At this point in the proceedings, a total of 12 principal jurors, consisting of 11 women and one man, were selected.
(5) Secondly, defendant, Francisco Perez, complained that he had instructed Attorney Cassidy prior to the start of jury selection that he had wanted “two guys and 10 ladies” on the jury.
(6) The court then ordered that Eileen F. Aulenb-ach be made the “second alternate” instead of a principal juror and that the male juror, Douglas R.I. Henfield, originally selected as an alternate, become a principal juror.
(7) The court did not remove or add any veniremen to the jury, with the exception of Claudio Rodriquez, a Hispanic male, whom the court ordered “reinstated” because of the inability of the assistant district attorney to articulate “neutral” reasons for exercising a peremptory challenge against a member of the defendant’s minority race; and, the court exercised its judicial discretion by exchanging one male alternate juror for one female principal juror, for reasons of judicial expediency.
(8) At no time within the hearing of the court or the official court stenographer did defendant or anyone else make reference to a “dream jury” as was reported in the newspaper;
*446 (9) At no time within the hearing of the court or the official court stenographer did defendant say “he needed a special jury because of a vision that demanded that 10 women and two men serve on the jury,” as was reported in the newspaper; and
(10) At no time did the court tell defense counsel that he could remove as many prospective jurors as he wanted to reach the “dream jury,” as was reported in the newspaper.
CONCLUSIONS OF LAW
While the Commonwealth and the defendant are generally entitled to seven peremptory challenges each in a non-capital felony case where only one defendant is being tried, plus one challenge for each two alternates selected, Pa.R.Crim.P. 1126(a)(2), the court retains judicial discretion to grant additional peremptory challenges whenever “special circumstances” justify doing so. ABA Standards for Criminal Justice, 2d ed., §15-2.6(a) (1980).
A casual reading of the official court stenographer’s transcript clearly shows the court’s sole motivation in doing what it did, in exercising its discretion to exchange one male alternate juror for one female principal juror, was to avoid a later claim by defendant for a new trial, in the event of conviction, as frivolous as it may have been, that because his lawyer refused the request he made of him before the selection process began, he was therefore “ineffective.”
It is also important to understand the dynamics of a criminal courtroom in today’s drug-infested society, where no less than 75 percent of the defendants being brought before the court are represented by public defenders or other lawyers appointed by the court to represent them. It goes without saying that *447 in many instances these lawyers, although doing their very best, are not highly regarded by the people forced to use their services because they feel they are being “sold out” by their lawyer.
Defense counsel in this case, who had been appointed by the court, was experiencing tremendous difficulty with his client from the moment he walked into the courtroom. Although the general public may have the perception that a criminal trial is a “battlefield” between the district attorney and the defendant, often times it instead becomes a “battlefield” between the defendant and his lawyer. When the court finds itself in such a situation, the court must, on occasion, take extraordinary measures to restore a feeling of confidence between the lawyer and his client — and above all restore order within his courtroom.
While the court therefore reaffirms its prior rulings, as a proper exercise of judicial discretion in the jury selection proceedings, we are faced, however, with a more serious problem which requires the court to take immediate action so the trial of this case is not further delayed.
That problem involves the news report appearing in the December 6, 1990, Reading Times /Reading Eagle, entitled “Judge OK’s "Dream Jury’ Request.” In the introductory paragraphs, it is reported, and accurately we might add, that defendant, Francisco Perez, is a convicted drug dealer currently serving a sentence of 10 to 20 years on an unrelated drug case, a sentence, incidentally, imposed by the same judge who is presiding over this case. Moreover, the same article states:
""Reading police say Perez and Hector Maldonado, 22, sold a quarter-ounce of cocaine for $230 to a county drug investigator in an alley behind the 200 block of North Front Street on October 26, 1989.
*448 “Maldonado was sentenced by Stallone to 12 to 25 years in prison in September for several incidents, including the razor slashing in Berks County Prison of another inmate who testified against him in an assault case.
“City investigators say Perez was a major cocaine trafficker in the city. . .
“State police said cocaine recovered in an investigation of Leon and Perez last fall had a street value of more than $3 million.”
Given the time frame between the date the jury was selected and the publication of this newspaper article, and the publicity obviously to be generated by the motion to strike filed by the District Attorney’s Office and before us this day, the court is of the opinion that it is very likely that these articles have and/or will be viewed by one or more of the jurors and, therefore, may very well influence their otherwise impartiality and ability to decide the case before the court strictly upon its merits.
Accordingly, the court hereby orders in the interests of justice to both the Commonwealth and defendant, as well as in the interest of judicial economy, that the jury be and is hereby dismissed from further service in this case.
A new jury will be selected in due course.
ORDER
And now, December 14, 1990, the court, upon its own motion, dismisses the “unsworn” jury selected on December 4, 1990, to hear the above-captioned case for the reasons set forth in the attached memorandum opinion.

. Upon agreement of counsel, the court had previously ordered that three alternate jurors be selected instead of two alternates, inasmuch as the actual trial was not scheduled to begin until the following month.

. Those present at sidebar, and therefore out of everyone else’s hearing, were defendant; defense counsel; the assistant district attorney; the official court stenographer, Judy Meckley; and the trial judge.